IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **C.T., by Next Friend** **Jeanette Beason and all others** **similarly situated** | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:11-01123 |
| **ROBERT BENTLEY, M.D., et al.,** | ) ) | **CLASS ACTION** |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

COME NOW the Plaintiffs in the above-styled action and respond to the Defendants' Motion to Dismiss All Defendants for lack of subject matter jurisdiction and/or for failure to state a claim for which relief can be granted. For the reasons set forth more fully below, Defendants' Motion should be denied in its entirety.

### I.   PRELIMINARY STATEMENT

This is a civil rights action brought under 42 U.S.C. § 1983 by one foster child, C.T., who is the Class representative for all of the children in Alabama who are classified as dependent.[1] These dependent children rely on the State of Alabama to provide them with adequate legal representation as is required by both Alabama statute and the Fifth and Fourteenth Amendments to the United States Constitution. The Defendants are systematically depriving dependent children of their right to adequate representation while they are in the custody of the Alabama

---

[1] The terms "dependent child" and "dependent children" are used herein as defined by *Ala. Code 1975 §12-15-102*

1

Department of Human Resources (hereinafter referred to as "DHR"). This is due to the overburdening of the legal service providers tasked with the representation of dependent children in Alabama, known as the Guardians Ad Litem (hereinafter referred to as "GALs"). The Defendants' systemic failures have violated, and continue to violate, the vested constitutional rights of C.T. and the other members of the Class, who are the dependent children of the State of Alabama. Plaintiffs' Complaint sufficiently alleges a cause of action under each of its counts, and more than amply provides Defendants with notice of the specific claims made against each Defendant and the grounds upon which they rest.

The Court of Appeals for the Eleventh Circuit has held, "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law." *Richardson v. Johnson,* 598 F.3d 734, 737 (11th Cir. 2010) (citations omitted). Plaintiffs clearly allege in paragraph 61 of the Complaint that Defendants are in violation of substantive due process rights granted under the Fifth and Fourteenth Amendments to the United States Constitution. These include, but are not limited to, the right of dependent children to protection from unnecessary harm while in government custody, the right to counsel, and the right to a living environment that protects their physical, mental and emotional safety and well-being. These are all substantive rights due to dependent children in the State of Alabama. The preservation of the children's rights hinges on the adequate legal representation by competent legal service providers.

Plaintiffs have filed a detailed Complaint asserting that the Defendants' course of conduct has subjected Plaintiffs to significant harm and that said harm is being accelerated by the actions of the Defendants. This harm is the deprivation of counsel to protect the safety and well-being of

the dependent children, which is in violation of their vested rights under the United States Constitution and Alabama statutes. Plaintiffs seek injunctive and declaratory relief to halt these continued practices prior to the harm resulting in irreparable damage to the dependent children of the State of Alabama. Plaintiffs further seek to ensure that adequate and mandatory legal representation is provided for all children in state custody.  "Class members need not 'establish that ineffective assistance was inevitable for each of the class members.' *Luckey v. Harris*, 860 F.2d 1012, 1017 (11th Cir. 1988).  Instead, Class members need only meet the traditional standard for the application of equitable relief, namely, a 'likelihood of substantial and immediate irreparable injury' if relief is not granted, and 'the inadequacy of remedies at law.' *Id*. Evidence of 'systemic' deficiencies such as inadequate resources for appointed counsel, is sufficient to meet this standard. *Id* at 1018; see also *Nicholson*, 203 F.Supp.2d at 240 ("[W]here the state imposes systemic barriers to effective representation, prospective injunctive relief without individualized proof of injury is necessary and appropriate." *Kenny A. by his Next Friend Linda Winn v. Perdue et al*, 356 F.Supp.2d 1353 (N.D. Ga. 2005).

As stated in Plaintiffs' Complaint, C.T. was determined to be dependent and placed in the custody of the Jefferson County Department of Human Resources when she was eight (8) months old.  Since being in DHR custody, C.T., now three (3) years old, has been moved to different "placements" or caretakers on four (4) separate occasions. Such persons are referred to in the Alabama Department of Human Resources ("DHR") as "foster parents."  C.T. is currently placed in the care of Jeanette Beason in St. Clair County, Alabama. Ms. Beason has only seen or heard from the GAL assigned to C.T.'s case on one occasion - in court at a dependency proceeding. Due to the confidential nature of juvenile proceedings, the records of C.T.'s past interactions with her GAL are not obtainable by the Plaintiffs. Based on Ms. Beason's

3

experience, C.T. has not had a GAL who has been involved with her well-being. Furthermore, C.T.'s GAL has not conducted a thorough investigation during the pendency of Ms. Beason's foster care.  C.T.'s GAL has not performed the duties required by the standards of GALs as promulgated by the Administrative Office of Courts and as are described in this response *infra*.

C.T. and the other dependent children of the State of Alabama are being systemically denied effective legal representation.  In many cases, the GAL stands as the only stable force between the child and chaos.  Only the GAL can protect the *child's best interests* as he/she is tasked to do under Alabama law. The authority to determine the method by which GALs are assigned and compensated is within the power of the Defendants.

## II.     LEGAL STANDARD FOR MOTION TO DISMISS

In determining a Motion to Dismiss for failure to state a claim upon which relief can be granted, the Court is to accept the allegations of the complaint and construe them in the light most favorable to the plaintiff.  The facts and all reasonable inferences from them are to be taken as true. The motion to dismiss should only be granted " 'when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" ' " *Jackson v. Bellsouth,* 372 F. 3d 1250, 1262 (11th Cir 2004). The *Catron* case is particularly instructive.  *Catron v. City of St. Petersburg*, 658 F.3d 1260 (11th Cir. 2011).  The Court of Appeals for the Eleventh Circuit stated in *Catron* as follows*:*

> A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  Stating a plausible claim for relief requires pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged': 'more than a sheer possibility that

a defendant has acted unlawfully.' *Id.*" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1264- 1265 (11th Cir. 2011).

The Defendants assert that this Court lacks subject matter jurisdiction over this claim pursuant to Federal Rule of Civil Procedure 12(b)(1).  It is abundantly clear that pursuant to 28 U.S.C. §1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  It is beyond question that 42 U.S.C. § 1983 *et seq.* is the primary vehicle by which violations of constitutional rights are brought before the federal courts of this nation.   The federal question jurisdiction of the district court clearly encompasses causes of action created by federal statutes, such as 42 U.S.C. §1983.  *Grable & Sons Metal Products, Inc. v. Daure Engineering & Mfg.*, 545 U.S. 308, 125 S.Ct. 2363 (2005).  See also *In re Gault*, 387 U.S. 1 (1967).

As stated by 42 U.S.C. §1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983.  The right asserted by the Plaintiffs is the liberty interest clearly established by Fourteenth Amendment of the United States Constitution.  The Court of Appeals for the Eleventh Circuit has recognized that a fundamental liberty interest exists in a custodial setting.  See *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987).

### III.     ARGUMENT

The Plaintiff and Class members allege that they have suffered the deprivation of a federal constitutional right to legal representation. This right is founded in the liberty interest of the Fifth Amendment to the United States Constitution as extended to the states via the Fourteenth Amendment to the United States Constitution. This right is well recognized in this country and an excellent example of the discussion of this right can be found in *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987). *Taylor* stands for three propositions of law that apply to this action.:

First, there exists a special relationship between the state agencies who deal with a child when the state has custody of a child. *Id* at 797 -798. This special relationship heightens the standard of care due to these children.

Second, there exists a liberty interest in a child's right to be safe in her environment and the right to personal security "constitutes a "historic liberty interest" protected substantively by the due process clause. *See Youngberg v. Romeo*, 457 U.S. 307, 315 (1982) (citing *Ingraham v. Wright*, 430 U.S. 651, 673 (1977)).  *Id* at 794 – 795.

Third, the Taylor decision directly states the position of the foster child: "[A] child involuntarily placed in a foster home is in a situation so analogous to a prisoner in a penal institution and a child confined in a mental health facility that the foster child may bring a §1983 action for violation of fourteenth amendment rights". *Id* at 797.

The complaint alleges in detail that the Plaintiffs have been systematically deprived of their federally constitutionally mandated right to counsel as more fully described below.

The Defendants' Motion to Dismiss claims that the State of Alabama's responsible agencies have no duty to ensure the adequate legal representation of dependent children and that

Plaintiffs have developed a novel cause of action.  Specifically, Defendants state, "It is not the legal responsibility of the named Defendants to ensure that children in state custody like C.T. are afforded adequate legal representation, including GALs."  See Defendants' Motion to Dismiss ¶ 18.  Nothing could be further from the truth. The Defendants have a statutorily affirmed responsibility to provide legal counsel to dependent children in the State of Alabama under § 12-15-304, Ala.Code 1975, which states in part:

> (a) In all dependency and termination of parental rights proceedings, the juvenile court **shall appoint a guardian ad litem for a child who is a party to the proceedings and whose primary responsibility shall be to protect the best interests of the child.**
>
> (b) The duties of the guardian ad litem include, but shall not be limited to, the following:
>
>> (1) Irrespective of the age of the child, meet with the child prior to juvenile court hearings and when apprised of emergencies or significant events impacting the child. In addition, the guardian ad litem shall explain, in terms understandable to the child, what is expected to happen before, during, and after each juvenile court hearing.
>>
>> (2) Conduct a thorough and independent investigation.
>>
>> (3) Advocate for appropriate services for the child and the family.
>>
>> (4) Attend all juvenile court hearings scheduled by the juvenile court and file all necessary pleadings to facilitate the best interests of the child. Code of Alabama 1975

In the *Kenny A*. case, the United States District Court for the Northern District of Georgia ruled that foster children have a statutory and constitutional right to counsel in all deprivation proceedings.  Specifically, the Court stated:

> "The Court rejects County Defendants' argument that plaintiffs have an adequate legal remedy in the form of State Bar complaints or lawsuits filed against individual child advocate attorneys because such actions cannot remedy the systemic deficiencies cited by plaintiffs.  The Court concludes that the parties' sharp dispute over whether plaintiffs have a right to counsel in deprivation proceedings, and whether that right is being violated, clearly presents a live controversy for which declaratory relief is appropriate…." *Kenny A. by his Next Friend Linda Winn, et al*, v. *Sonny Perdue et al, 356 F. Supp.2d 1353, 1357 (2005).*

The Georgia statute referenced in the *Kenny A.* case is highly similar to the Alabama Statute. The Georgia statute says:

> "(a) *"Indigent person" defined.* An indigent person is one who at the time of requesting counsel is unable without undue financial hardship to provide for full payment of legal counsel and all other necessary expenses for representation.
> (b) *Right to legal representation.* Except as otherwise provided under this article, a party is entitled to representation by legal counsel at all stages of any proceedings alleging delinquency, unruliness, incorrigibility, or deprivation and if, as an indigent person, a party is unable to employ counsel, he or she is entitled to have the court provide counsel for him or her. If a party appears without counsel, the court shall ascertain whether such party knows of his or her right to counsel and to be provided with counsel by the court if he or she is an indigent person. The court may continue the proceeding to enable a party to obtain counsel and shall provide counsel for an unrepresented indigent person upon the request of such a person. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more parties conflict, separate counsel shall be provided for each of them." Ga. Code Ann., § 15-11-6

Both the Georgia statute and the Alabama statute set forth the states' duties to provide adequate legal representation for children in the foster care system. While Georgia uses the term *deprived* and Alabama uses the term *dependent*, the statutes are essentially setting forth similar duties.

With respect to the constitutional due process rights of these foster children, the United State Constitution states:

> "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation" Fifth Amendment to the United States Constitution.

The Fifth Amendment is applied to the states by way of the Fourteenth Amendment. It is beyond controversy that the Fourteenth Amendment applies the Fifth Amendment to the state of Alabama. The Court in *Kenny A.* stated:

> "It is well settled that children are afforded protection under the Due Process Clauses of both the United States and Georgia Constitutions and are entitled to constitutionally adequate procedural due process when their liberty or property rights are at stake. See, e.g. *Goss v. Lopez*, 419 U.S. 565, 42 L.Ed.2d 725, 95 S. Ct. 729 (1975)(lack of adequate procedures used by schools in suspending students violated due process); *In re Gault*, 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428 (1967) (holding that minors have due process right to counsel in delinquency proceedings); (*K.E.S. v. Georgia*, 134 Ga. App. 843, 847, 216 S.E.2d 670 (1975)(recognizing minors' right to counsel established in *In re Gault*)…" *Kenny A by his Next Friend Linda Winn, et al.*, v. *Sonny Perdue, et a*l, 356 F.Supp.2d 1353, 1359 (2005).

The constitutional protections of dependent children to their liberty interests are well-established. Plaintiffs argue that the lack of adequate legal service providers leads to the deprivation of a family relationship absent compelling reasons. This right is derived from the broad rights of association and privacy under the First and Ninth Amendments. See *Id* and *Roberts v. United States Jaycees*, 468 U.S. 609, 617-620 (1984)(right to family integrity); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct 1388, 71 L.Ed.2d 599 (1972). Plaintiffs assert that their rights are being violated by the way GALs are being controlled and funded by agencies of the State of Alabama.

The present case is not unlike *Wyatt v. Stickney*, 325 F. Supp. 781 (M.D. Ala. 1971) aff'd sub nom *Wyatt v. Aderholt*, 503 F.2d 1305 (5th Cir. 1974) where the United States Court of Appeals for the Fifth Circuit found that where there had been a documented history of substandard practices by the Alabama Department of Mental Health. The Fifth Circuit held that a federal district court could order the department to produce a plan to meet minimum constitutional standards for adequate care. The court in *Wyatt* considered whether such a holding would invade the province of decision- making reserved for the state legislature and found that it did not, stating that the state legislature is not free "for budgetary or *any* other reasons to provide a social service in a manner which will result in the denial of individuals' constitutional rights." *Id* at 1315 *(italics in original)*.

9

The actions of the Defendant Agencies of the State of Alabama have systematically denied the dependent children of the State of Alabama of their right effective legal counsel through guardians ad litem.   Upon information and belief, that some GALs in Alabama have well over five-hundred (500) cases. This is a direct result of the method by which GALs are assigned to represent dependent children. Under Alabama Act 2011-678 (hereinafter referred to as "the Act"), local indigent defense boards are to be formed.  The local indigent defense boards are tasked with the responsibility of determining how indigent individuals are assigned legal representation, with oversight by the Alabama Office of Indigent Defense Services (hereinafter referred to as "OIDS"). Dependent children are inherently indigent, and must be provided legal representation by way of a GAL.  In many cases, pursuant to the Act, upon information and belief, local counties are converting from an appointment system (under which local judges appointed GALs to dependent children) to a contract system (under which the county enters into contracts with local attorneys to provide GAL services).  In some cases, counties were using the contract system prior to the promulgation of Act 2011-678.   As a hypothetical example, under the appointment system, there could easily be a scenario whereby fifteen (15) attorneys were getting GAL appointments in a given county.  Suddenly, the county switches over to a contract system whereby contracts to handle all GAL appointments for the entire county are awarded to possibly three or even fewer attorneys.   The workload of each GAL then increases to the point that effective representation is impossible. This is fundamentally unfair to the dependent children who depend on these GALs.

### IV.    **PLAINTIFFS' RIGHT TO COUNSEL IS THE RIGHT TO EFFECTIVE COUNSEL**

Plaintiffs aver that the present system causes GALs to only spend two or three hours per year with each child, and this normally occurs in a court setting. This is wholly insufficient to adequately represent the child:

> "The right to counsel, of course, means the right to *effective* counsel. See *Evitts v. Lucey*, 469 U.S. 387, 395, 83 L.Ed. 2d 821, 105 S.Ct. 830 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 25 L.Ed. 2d 763, 90 S.Ct. 1441 (1970)("It has long been recognized that the right to counsel is the right to the effective assistance of counsel"); *Nicholson v. Williams*, 203 F. Supp. 2d 153, 239 (E.D. N.Y. 2002)("The right to appointed counsel when necessary for due process is a right to effective counsel")." *Kenny A. by his Next Fried Linda Winn, et al. v. Sonny Perdue, et al.*, 356 F.Supp.2d 1353.

The present case can be viewed as a similar to *R.C. R.C., by his Next Friend, the Alabama Disabilities Advocacy Program et al v. Nachman, 969 F. Supp. 682* (1997). In that case, the Alabama Department of Human Resources was found to be substandard in its care of children in its custody. The difference is that the present case involves the rights of the children as expressed through their attorneys. *R.C.* presumes that GALs are able to perform their duties, and that presumption is central to the decision. *Id.* If the GALs cannot perform their duties, the system breaks down and the children's rights are suppressed.

Plaintiffs have been denied their due process rights to effective counsel and this denial of rights is likely to continue. In its training of GALs in Alabama, the Administrative Office of Courts (hereinafter referred to as "AOC") uses a text, the Alabama Guardian ad Litem Manual. It is simply impossible for the GALs to provide the services laid out in the GAL manual promulgated by the AOC. The Manual sets forth duties and standards that are to be applied in every juvenile case. The standards listed below are only those that apply to the preliminary stage and do not even include those required for pre-trial, trial and post-trial stages. As directed by the The Guardian Ad Litem Manual:

1. The guardian ad litem should obtain and examine every available relevant document.

2. The guardian ad litem should interview and observe the child to ascertain the detailed facts relevant to custody, the child's wishes, the need for independent evaluations and the need for or appropriateness of interim judicial relief.

3. The child should be advised, in terms the child can understand, of the nature of the proceedings, the child's rights, the role and responsibilities of the guardian ad litem, the attorney-client privilege, the court process, the possible consequences of the legal action, and how the child may contact the guardian ad litem at any time during the course of the proceedings.

4. The parents' or other party's attorneys should be advised of the role and responsibilities of the guardian ad litem, including the guardian ad litem's legal standing in the proceedings, and the guardian ad litem's responsibilities to participate fully to protect the child's interests and to express the child's wishes.

5. The child's present home and any proposed home should be visited by the guardian ad litem.

6. The guardian ad litem should interview the parties and any other relevant person, including, any one with relevant knowledge of the child or the parties, as well as any potential or expert witnesses.

7. The guardian ad litem should apply for appropriate court orders to protect the child or obtain temporary relief, determination visitation, and limit repeated or unnecessary interviews or evaluations.

8. The guardian ad litem should participate whenever any party requests an interim court order which may affect the child.

9. When appropriate, independent court ordered evaluations or studies should be requested.

*Alabama Guardian ad Litem Manual*.

It is clear that the performance of the above standards and the court hearings mandated in a dependent child's case would exceed twenty-five (25) hours per case.  Under a two thousand (2000) hour billing year (calculated by multiplying forty (40) hours per week times fifty (50) weeks), a GAL can only handle approximately eighty (80) cases per year at the most. According to the Law Office Practice and Management Office of the Alabama State Bar, only 16% of the

12

attorneys in Alabama bill over 2000 hours per year.   Plaintiffs allege that many GALs, over whom the Defendants have "case management,"  are responsible for many more than eighty (80) cases per year.

## V.     EACH NAMED DEFENDANT IS A PROPER PARTY

### A. Alabama Office of Indigent Defense Services

Defendants argue that the Plaintiffs mischaracterize the job responsibility of the Alabama Office of Indigent Defense Services (OIDS).  The responsibilities of the OIDS by statute include overseeing the assignment of GALs to dependent children.  Defendants argue that a reasonable review of the statute does not support Plaintiffs' interpretation.  However, a plain reading of the Act does in fact support Plaintiffs' contention. The Act states in relevant part that the OIDS Director is tasked with, among other things:

> "Providing fiscal responsibility and accountability in indigent defense preparation, maintaining and operating indigent defense systems, whether appointed counsel, contract counsel, public defender, or appellate defender offices, some combination of the above, or any other method which meets the goals forth in the Act; …… and **caseload management** for appointed counsel, contract counsel, and public defenders." *The Act at page 3*.

By statute, the OIDS is clearly tasked with oversight of the method of GAL appointments and the number of cases that they handle, hence the term "caseload management."  Defendants are even more off-base in their defense of the system when they state that "the Act creating OIDS in no way affects the court's appointment of GAL's nor the statutory duties of a GAL". See Defendants' Motion to Dismiss ¶ 6. This is incorrect because dependent children require legal representation just as indigent criminal defendants require legal representation, and the Act creating OIDS governs the appointment of legal representation for both.

The attorneys referenced in the Act clearly include Guardians ad Litem. The Act goes on to state:

> If it appears to the trial court in a delinquency case, need of supervision case, or other judicial proceeding in which a juvenile is a party, that the juvenile is entitled to counsel and that the juvenile is not able financially or otherwise to obtain the assistance of counsel or that appointed counsel is otherwise required by law, the court shall appoint counsel to represent and assist the juvenile or act in the capacity of guardian ad litem for the juvenile. It shall be the duty of the appointed counsel, as an officer of the court and as a member of the bar to represent and assist the juvenile to the best of his or her ability.

The OIDS also affects the legal representation of dependent children by controlling the method and funding of attorneys for all indigents (including children). Limiting the number of attorneys that are able to practice juvenile law through the use of contract systems inevitably affects the quality of the representation, regardless of the quality of the individual attorneys.

### B. Alabama Administrative Office of Courts and its Director

Defendants maintain that the Administrative Office of Courts and its Director are wrongly included in the action. Defendants' own pleading states that the AOC is tasked with GAL certification under both state and federal law. Defendants' Motion to Dismiss ¶8. The AOC and its Director are responsible for ensuring that the GALs are adequately trained and that the GALs have the resources needed to fulfill their duties. By allowing contract systems to be implemented whereby one single GAL is tasked with hundreds of cases, the AOC and its Director have failed in their responsibilities under both state and federal law.

### C. The Alabama Department of Finance, its Director, the Alabama Office of the State Comptroller and the State Comptroller

Defendants also mischaracterize the roles of the Alabama Department of Finance, its Director, the Alabama Office of the State Comptroller and the State Comptroller. Each voucher

submitted by an attorney GAL to the Comptroller is reviewed either approved or denied.  This process occurs before the Alabama Department of Finance issues payment to the attorney who submitted the voucher for compensation for services rendered.  The contracts which the Plaintiffs complain of are also administrated by these Defendants.  Moreover, these Defendants make budgetary recommendations with regard to monies made available for these services.

### D.  Governor Bentley

Governor Bentley has supervisory responsibilities over all of named Defendants and direct control over them.  Moreover, Governor Bentley has a duty under his oath of office to support the laws of the State of Alabama and the United States Constitution.  Further, Bentley has the duty under 36-13-8 to require state agencies to meet the terms and conditions imposed by grants under acts of Congress such as those in 42 U.S.C.A § 5106, to which the Defendants admit responsibility to for the AOC and OIDS in their motion.

### VI.   THE DEFENDANTS ARE NOT ENTITLED TO IMMUNITY

Defendants also state that the Plaintiffs have "sued the state" and haven't made the kind of allegations that permit relief against the Governor, Director of Finance, Director of the AOC, and the State Comptroller as state officials.  To the contrary, the Plaintiffs have sued the proper parties who control the method of appointing, controlling, and funding the GAL system.  Plaintiffs note that these state officials have been named in their official capacities, not in their personal capacities, and therefore, are not entitled to qualified immunity.  See *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  Defendants cite the *Quern* case which states that 42 U.S. § 1983 does not explicitly abrogate Eleventh Amendment protections. *Quern v.*

*Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed. 2d 358 (1979).  However, political subdivisions of the state have no Eleventh Amendment immunity protection from suit in federal court. *Moor v. County of Alameda County, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).*

## VII.    PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1988

Defendants argue that this Court does not have jurisdiction to ultimately rule upon Plaintiffs' claim for attorneys' fees under 42 U.S.C. § 1988 because the claim is not yet ripe. Plaintiffs find this argument confounding as the practice of including 42 U.S.C. § 1988 in such pleadings is customary.  It is merely an attempt on the part of Plaintiffs to be comprehensive in their pleading.   For the Defendants to argue that this court lacks subject matter jurisdiction as to the fee award is conjecture.

## VIII.   CONCLUSION

 Based on the above, Plaintiffs respectfully request that the Defendants' Motion to Dismiss be DENIED in its entirety.

/s/ Anna L. Hart
Anna L. Hart, Esq.
Dan C. King, III., Esq.
**Stewart & Stewart, P.C.**
1826 3rd Avenue North
Suite 300
Bessemer, Alabama 35020
Telephone:  (205) 425-1166
Facsimile:    (205)425-5959
Email:  ahart@stewartandstewart.net
            dckiii@hotmail.com

        Timothy L. Arnold, Esq.
**Law Office of Timothy Arnold**
1823 3rd Avenue North
Bessemer, Alabama  35020
Telephone:  (205) 428-4888
Facsimile:    (205) 428-4880
Email:  ta918@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and served the following via U.S. Mail.

    /s/ Anna L. Hart

Mary Goldthwaite, Esq.
**Alabama Office of the Attorney General**
501 Washington Avenue
Montgomery, Alabama  36104

Roland Cooper Shattuck, Esq.
**Office of the Governor**
State Capitol, Suite N-103
600 Dexter Avenue
Montgomery, AL  36130