IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| C.T., by next friend Jeanette Beason and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) CASE NO. 2:11-cv-1123-MEF ) (WO—Publish) |
| ROBERT BENTLEY, *et al.*, | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case involves a proposed class action brought on behalf of all children in the custody of the State of Alabama against various state agencies, including the Alabama Administrative Office of the Courts ("AOC"), the Alabama Office of Indigent Defense Services ("OIDS"), the Alabama Department of Finance ("DOF"), and the Alabama Office of the State Comptroller ("OSC") (collectively, the "Agency Defendants"), as well as various state officials,[1] including Robert Bentley, M.D. ("Bentley"), the Governor of Alabama; Callie T. Dietz ("Dietz"), the former Administrative Director of AOC;[2] Ricky McKinney ("McKinney"), Director of OIDS; Marquita F. Davis ("Davis"), the former Director of

---

[1] The Official Defendants have been sued in their official capacities only. (Doc. #25.)

[2] Callie T. Dietz is the former Administrative Director of AOC. Therefore, for purposes of this Opinion, the Court considers Alyce Spruell ("Spruell"), the current Administrative Director of AOC, to take the place of Dietz in her official capacity.

DOF;[3] and Thomas L. White ("White"), State Comptroller (collectively, the "Official Defendants").[4] C.T., a foster child, brings claims for declaratory and injunctive relief through her foster mother, Jeanette Beason ("Beason" or the "Named Plaintiff"), claiming that Defendants failed to provide children in the custody of the State of Alabama with adequate and effective legal representation—namely, guardian ad litem ("GAL") representation—in dependency proceedings. (Doc. #1.) C.T. seeks a class-wide declaration of the rights of dependent children in Alabama to receive effective legal representation, as well as an injunction ordering Defendants to remedy purported systemic deficiencies in the provision of GAL services to dependent children throughout Alabama.

Before the Court are two motions to dismiss: (1) the Motion to Dismiss All Defendants filed by the Agency Defendants, Bentley, Spruell, Davis, and White (Doc. #20), and (2) McKinney's Motion to Dismiss (Doc. #30). Both motions seek to dismiss C.T.'s Amended Complaint in its entirety.

In the Amended Complaint, C.T. asserts the following claims: (1) a claim for permanent injunctive relief to protect C.T. and other class members[5] from the deprivation of their fundamental rights and liberty interests, including their right to physical and

---

[3] Marquita F. Davis is the former Director of DOF. Therefore, for purposes of this Opinion, the Court considers Bill Newton ("Newton"), the current Director of DOF, to take the place of Davis in his official capacity.

[4] The Agency Defendants and the Official Defendants will be referred to collectively in this Opinion as "Defendants."

[5] At this stage, C.T.'s proposed class has not been certified; nor has C.T. filed a motion seeking class certification.

emotional safety, while in the custody of the State of Alabama (Count I); (2) a claim for declaratory judgment as to the rights of C.T. and other purported class members to receive adequate legal representation (Count II); (3) a claim for violation of the right to counsel based on the rights of C.T. and other purported class members, as wards of the State, to receive adequate legal representation (Count III); and (4) a claim for deprivation of C.T. and other class members' Fifth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 (Count IV). (Doc. #25, ¶¶ 41–62.) Simply stated, the goal of C.T.'s action is to obtain injunctive and declaratory relief for herself and other purported class members to ensure that all children in the care of the State of Alabama will receive adequate legal representation by reducing the caseloads of GALs statewide to a more manageable level. For the reasons set forth below, the Court finds that the motions are due to be GRANTED.

## II. FACTS[6]

The Jefferson County Department of Human Resources took C.T. into custody when she was eight months old because her biological mother was unfit to care for her. Since then, C.T. has been moved from one caretaker to another; all told, C.T. has switched foster parents a total of four times. Now approximately four years old, she lives with her current foster mother, Beason, in St. Clair County, Alabama. Beason only recalls seeing C.T.'s GAL on one occasion, and according to the Amended Complaint, that GAL has not been involved in C.T.'s placement, has not investigated her living situation, and has not advocated

---

[6] Because this is a motion to dismiss, the facts are taken from the allegations in C.T.'s Amended Complaint (Doc. #25), which the Court must accept as true.

for her best interests. (Doc. #25, ¶ 3.)

C.T. alleges that Defendants have failed and continue to fail to meet their legal obligations to Alabama's dependent children by not providing them with effective legal representation in dependency proceedings. (Doc. #25, ¶ 1.) Specifically, C.T. contends that the "unreasonably large caseloads" of GALs in Alabama result in these attorneys routinely being "unable to consult with their clients prior to court appearances" or "to provide [them with] effective" representation. (Doc. #25, ¶ 19.) C.T. claims that this lack of effective representation "dooms these children to physical, emotional and psychological harm, lost childhoods, and too often, ruined lives." (Doc. #25, ¶ 1.)

C.T. alleges that "different Alabama counties have different methods of determining the number of GALs that will be made available . . . and how these attorneys will be chosen," leading to "inconsistent representation throughout the state." (Doc. #25, ¶ 16.) C.T. also alleges that, due to inadequate funding, "GALs in Alabama are responsible for a dangerously large number of children" and that, in many Alabama counties, a small number of GALs are "consistently expected to handle hundreds, and possibly more than one thousand, cases each."[7] (Doc. #25, at ¶ 11.) Notably, however, C.T. does not allege how her specific GAL's actions (or inactions) fall within the pattern of substandard legal representation she claims plagues dependent children in Alabama statewide. There are no

---

[7] According to national standards established by the National Association of Counsel for Children ("NACC"), no child advocate attorney should maintain a caseload of over one hundred individual child clients at a time. (Doc. #25, ¶ 17.)

allegations as to the caseload of C.T.'s GAL, the method of selection in the county of appointment of C.T.'s GAL, or that C.T.'s specific GAL is inadequately compensated. There are also no allegations that C.T.'s specific GAL has failed to adequately consult with her before court proceedings or otherwise provide her with effective legal representation.

Rather, C.T. generally alleges that Defendants have "failed to provide funding that would allow for a sufficient number of GALs to provide representation to dependent children," and that they "have been fully aware of pervasive, systemic problems in the state of Alabama with regard to the effects of inadequate legal representation of dependent children." (Doc. #25, ¶¶ 14, 18.) Governor Bentley is specifically alleged to have the "ultimate authority within the executive branch of the government of the State of Alabama to direct and control all other defendants," (Doc. #25, ¶ 25), while each of the other Defendants are alleged to be involved with administering and funding the State's GAL services. (Doc. #25, ¶¶ 26–32.)

### III. DISCUSSION

Federal courts have limited jurisdiction. To establish a claim in federal court, the plaintiff must display complete diversity of citizenship or properly raise a question of federal law for subject matter jurisdiction to exist. The Eleventh Circuit recognizes two challenges to a district court's exercise of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure: facial and factual attacks. *See Whitson v. Staff Acquisition, Inc.*, 41 F. Supp. 2d 1294, 1296 (M.D. Ala. 1999). "A facial attack questions the sufficiency of the pleading and the plaintiff enjoys similar safeguards to those provided when opposing a

5

motion to dismiss" under Rule 12(b)(6). *Id.* "The court accepts the plaintiff's allegations as true, construes them most favorably to the plaintiff, and will not look beyond the face of the complaint to determine jurisdiction." *Id.*

"A factual attack, on the other hand, permits 'the trial court [to] proceed as it never could under [Rule] 12(b)(6).'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam)). A district court may consider "matters outside the pleadings, such as testimony and affidavits[.]" *Dunbar*, 919 F.2d at 1529. Indeed, to determine whether it has the power to hear a case, the district court "may weigh the evidence to confirm its jurisdiction." *Whitson*, 41 F. Supp. 2d at 1296. "'No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts does not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Dunbar*, 919 F.2d at 1529).

In this case, the Court construes Defendants' motions to dismiss as facial attacks on the sufficiency of its subject-matter jurisdiction and will proceed accordingly. *See Adamore v. Sw. Airlines Corp.*, No. H-11-0564, slip op. at 2, 2011 WL 6301398 (S.D. Tex. Dec. 15, 2011) (Werlein, J.) ("A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings.").

A.   **Eleventh Amendment Sovereign Immunity**

In their motions to dismiss, Defendants contend that all claims against them should be dismissed on Eleventh Amendment sovereign immunity grounds. Specifically,

Defendants argue that C.T.'s Amended Complaint is effectively a suit against the State of Alabama, which is barred by the Eleventh Amendment. In response, C.T. contends that the Agency Defendants are not entitled to Eleventh Amendment sovereign immunity because they are "political subdivisions," and that the Official Defendants are not entitled to sovereign immunity either because of their degree of control over the GAL system. (Doc. #24, at 15–16.) As explained in greater detail below, the Court finds that the Agency Defendants are entitled to Eleventh Amendment sovereign immunity, while the Official Defendants are not.

1. **The Agency Defendants**

The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[A]lthough the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). It is also "well-settled that Eleventh Amendment immunity bars suits brought in federal court when . . . an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977)); *see also Florida Dept. of Health &*

*Rehabilitative Servs. v. Fla. Nursing Home Assn.*, 450 U.S. 147 (1981) (holding that an agency of state government is part of the state for Eleventh Amendment purposes).

Each of the Agency Defendants—AOC, OIDS, DOF, and OSC—is a state agency that is unquestionably an arm of the State of Alabama.[8] Moreover, C.T. has not asserted any valid waiver or abrogation of Alabama's sovereign immunity with respect to the claims asserted against the Agency Defendants. (Doc. #24.) Finally, the only federal statute relevant to C.T.'s claims is § 1983, which does not abrogate state sovereign immunity to authorize suits against a state. *See, e.g.*, *Quern v. Jordan*, 440 U.S. 332 (1979). For these reasons, the Agency Defendants are entitled to Eleventh Amendment sovereign immunity, and all claims asserted against them in the Amended Complaint are due to be dismissed.

### 2. The Official Defendants

The Official Defendants are in an entirely different position from the Agency Defendants. Under the doctrine of *Ex Parte Young*, the Eleventh Amendment does not preclude suits against state officers for injunctive relief, even when the remedy will enjoin the implementation of an official state policy. *See* Chemerinsky, *Federal Jurisdiction* § 7.5.1; *see also Ex Parte Young*, 209 U.S. 123 (1908) (establishing the principle that states

---

[8] In C.T.'s response (Doc. #24, at 16), she contends that the Agency Defendants are "political subdivisions" and, therefore, are not entitled to Eleventh Amendment sovereign immunity. While C.T. is correct that suits against "political subdivisions" are not barred by the Eleventh Amendment, *see, e.g.*, *N. Ins. Co. v. Chathom Cty.*, 126 S. Ct. 1689 (2006), she misunderstands that crucial term, which refers to local governing bodies below the state level. *See* Erwin Chemerinsky, *Federal Jurisdiction* § 7.4 (6th ed. 2012). It is clear that an executive-branch agency of state government—such as the Agency Defendants—is part of the state for Eleventh Amendment purposes. *Id.*

may be sued for injunctive relief). Nor does the Eleventh Amendment prohibit a federal court from entering injunctive relief against a state officer, even if such relief may cost the state substantial sums of money. *See, e.g.*, *Quern*, 440 U.S. at 334 (holding it permissible under the Eleventh Amendment for a district court to order that notice be given to plaintiffs as to how they might have eligibility determined for past welfare benefits); *Milliken v. Bradley*, 433 U.S. 267, 289–91 (1977) (holding it permissible under the Eleventh Amendment to order state defendants to pay half the costs attributable to implementing a state-wide desegregation order).

The Eleventh Amendment does, however, prevent a federal court from awarding retroactive relief paid from the state treasury to plaintiffs who are suing state officers under the *Ex Parte Young* doctrine. *See Edelman v. Jordan*, 415 U.S. 651 (1974) (holding that the Eleventh Amendment barred an injunction requiring the state to reimburse welfare funds improperly withheld in the past, as such an injunction essentially amounted to compensation for past injuries). In other words, to successfully sue state officials under the *Ex Parte Young* doctrine, a plaintiff must seek prospective relief only, whether it be injunctive or declaratory. *See, e.g.*, *Cory v. White*, 457 U.S. 85, 90–91 (1982) (holding that a federal court may require future compliance with federal law from state officials but it may not require compensation for past violations).

In this case, aside from attorneys' fees under 42 U.S.C. § 1988, the only remedy C.T. seeks is declaratory and injunctive relief, which is prospective in nature. She does not seek

money damages, whether directly or under an equitable guise; rather, C.T. seeks future changes in the provision of GAL services to dependent children in Alabama. While the future changes sought by C.T. may be costly to Alabama's treasury, the prospective relief she seeks from the Official Defendants is permissible under the Eleventh Amendment. *See, e.g., Milliken*, 433 U.S. at 289–91.

**B.      Standing**

As stated above, the Eleventh Amendment does not preclude C.T.'s claims against the Official Defendants, but the doctrine of standing does. C.T. is seeking declaratory and injunctive relief against the Official Defendants on behalf of herself as well as a class of similarly situated dependent children in Alabama. However, because the Court has not certified a putative class in this case, to recover the relief she is seeking, C.T. must demonstrate, at a minimum, that she meets Article III's standing requirements as an individual plaintiff. *Lynch v. Baxley*, 744 F.2d 1452, 1456 (11th Cir. 1984) ("Individual standing requirements must be met by anyone attempting to represent [her] own interest or those of a class. If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, [she] may not seek relief on [her] behalf or on that of the class."). This is a burden that C.T. has failed to meet.

Article III of the United States Constitution sets out nine types of "cases" and "controversies" that federal courts can hear. *See* U.S. Const. art. III, § 2. By implication, the case or controversy requirement places substantial limits on the federal judicial power

by requiring adverse parties to present a federal court with a concrete legal dispute for adjudication. This constitutional limitation furthers separation of powers principles by keeping the courts from "intrud[ing] into areas committed to the other branches of government," *Flast v. Cohen*, 392 U.S. 83, 95 (1968), while at the same time conserving judicial resources, enhancing judicial decision making, and promoting fairness. *See* Chemerinsky, *Federal Jurisdiction* § 2.1.

One way in which federal courts give effect to Article III's case-or-controversy requirement is through the standing doctrine. Generally speaking, standing requires the plaintiff to show that she is the proper party to bring the matter before the court. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."). To make this showing, the plaintiff must establish that:

> (1) [she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). These three elements "constitute[] the core of Article III's case-or-controversy requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998).

The plaintiff bears the burden of establishing the three elements of standing. *See*

*Bennet v. Spear*, 520 U.S. 154, 167–68 (1997). The proof required to shoulder this burden varies depending on the stage of the litigation. *See In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 609 (N.D. Ga. 1997) (citing *Lujan*, 504 U.S. at 561). "At the motion to dismiss stage, the party seeking standing may rely on the facts alleged in the complaint." *Id.* When the plaintiff seeks injunctive relief, as in this case, she "must allege facts from which it appears there is a substantial likelihood that [s]he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Injunctive relief also requires "a substantial continuing controversy between [the] parties." *Id.* at 1347 (citing *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)).

On the first element—injury in fact—C.T. must show, at an "irreducible minimum," that "[she] personally has suffered some *actual* or *threatened* injury." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (emphasis added). In the present case, C.T. generally alleges that she is threatened with the future deprivation of her state statutory rights, as well as fundamental liberty interests, due to ineffective assistance of counsel resulting from systemic inadequacies in the provision of legal representation to minor children in custody of the State of Alabama. C.T. specifically alleges that the GAL assigned to her case has failed to provide effective assistance of counsel, citing the GAL's near-total lack of involvement in C.T.'s placement, the GAL's failure to conduct a thorough investigation of C.T.'s foster-home placement, and

the GAL's failure to identify and advocate for C.T.'s best interests. (Doc. #25, ¶ 1.) C.T. further alleges that systemic, state-wide deficiencies in the provision of GAL services will physically and psychologically harm innumerable children.

The injury to C.T. as alleged in her Amended Complaint—the immediate threat of being deprived of her fundamental rights and liberty interests due to the inadequate assistance of her GAL—is sufficient to meet Article III's standing requirement. Given the ongoing and periodic nature of dependency proceedings for all children in state custody,[9] there is indeed a "substantial likelihood that [C.T.] will suffer injury in the future." *Malowney v. Fed. Collection Deposit Group*, 193 F.3d at 1346 (citing *Lyons*, 461 U.S. 95 at 102). At each dependency proceeding, the juvenile court has the power to change C.T.'s foster-home placement, to place her in a state institutional setting, or to enter other orders that would profoundly affect her fundamental rights and liberty interests. The Court finds that the alleged inadequate legal representation provided by C.T.'s GAL in her ongoing, periodic dependency proceedings provides the requisite likelihood of future injury to her fundamental rights and liberty interests to satisfy Article III's injury requirement.

On the second element—causation—C.T. must show that her threatened injury is "fairly traceable" to the challenged actions of the Official Defendants. *See Friends of the Earth*, 528 U.S. at 180–81. This means that, even if the relief requested might have a substantial effect on the overall quality of GAL representation provided to dependent

---

[9] During a dependency proceeding, a court reviews and enters orders regarding all aspects of a child's placement in state custody.

children in Alabama, C.T. must nonetheless show that her *own* injury is directly caused by the Official Defendants and not by the independent actions of "some third party not before the court." *See Allen v. Wright*, 468 U.S. 737, 757 (1984) (holding that causation is a distinct requirement of standing apart from whether requested relief might substantially remedy a threatened constitutional injury).

C.T. has failed to meet her burden as to this element. While C.T. alleges a sufficient injury, she does not provide the Court with the allegations needed to establish that the Official Defendants' challenged conduct—the purported under-funding, inadequate oversight, systemic deficiencies in the state-wide GAL system—is the cause of C.T.'s specific injury (*i.e.*, her own GAL's alleged inadequate assistance and representation of her interests). C.T. does not allege any cause of her own GAL's ineffective assistance—such as her GAL handling an extremely high caseload, a defective process in the county that appointed her GAL, or inadequate compensation of her GAL—that is *fairly traceable* to the Official Defendants' challenged conduct. In her Amended Complaint, C.T. states that "different Alabama counties have different methods of determining the number of GALs that will be made available . . . and how these attorneys will be chosen," leading to "inconsistent representation throughout the state." (Doc. #25, ¶ 16.) The Court finds this particularly significant, as this broad allegation leaves open the possibility, or at least the inference, that C.T.'s injuries were as likely caused by the independent actions of third parties, such as her GAL, the unnamed county of her GAL's appointment, or the particular judge that appointed

her GAL, rather than any conduct by the Official Defendants.

In short, the line of causation between C.T.'s injuries and the Official Defendants' actions (or inactions) with respect to the GAL system in Alabama is too attenuated to provide C.T. with standing to pursue her claims against the Official Defendants. *Allen*, 468 U.S. at 757 (holding that "indirectness of the injury . . . may make it substantially more difficult to meet the minimum requirement of Article III") (internal quotations omitted). Thus, the Court is compelled to find that the causation requirement has not been met. "The links in the chain of causation" between the Official Defendants' challenged conduct and C.T.'s injuries "are far too weak for the chain as a whole to sustain [C.T.'s] standing." *Id.* at 759.[10] Accordingly, C.T's claims against the Official Defendants as alleged in the Amended Complaint are due to be dismissed.

---

[10] Due to C.T.'s failure to establish that her asserted injury is fairly traceable to the Official Defendants' conduct, it is unnecessary for the Court to consider whether the relief sought would redress C.T.'s injury, which is the remaining element of the standing analysis. Moreover, because C.T.'s claims have been dismissed in their entirety on Rule 12(b)(1) grounds, it is unnecessary for the Court to address Defendants' Rule 12(b)(6) arguments. (Docs. #20, 30.)

## IV. CONCLUSION

For the reasons set forth above, it is hereby ORDERED as follows:

1. The Motion to Dismiss All Defendants (Doc. #20) is GRANTED. C.T.'s claims against the Agency Defendants are DISMISSED WITH PREJUDICE on the basis of sovereign immunity, while her claims against the Official Defendants are DISMISSED WITHOUT PREJUDICE on the basis of a lack of standing; and

2. Defendant McKinney's Motion to Dismiss (Doc. #30) is GRANTED, and C.T's claims against McKinney are DISMISSED WITHOUT PREJUDICE on the basis of a lack of standing.

Done this the 16th day of September, 2013.

                                                /s/ Mark E. Fuller
                                     UNITED STATES DISTRICT JUDGE